LOBRANO, J.,
dissents and assigns reasons.
I respectfully dissent. I would vacate the district court’s judgment denying the motion to set aside the judgment of bond forfeiture filed by Financial Casualty & Surety (“FCS”). Considering the failure of the Orleans Parish Sheriffs Office (“OPSO”) to perform its statutorily mandated duty of executing the outstanding alias capias against Ladareus J. Jones (“Defendant”) while Defendant was in its custody, I would remand this case to the district court for -a hearing to determine whether OPSO’s failure to execute the alias capias modified the principal obligation under the surety contract such as to effect a release of FCS pursuant to “the laws applicable to civil contracts.”[1]
I am compelled to dissent to address the effects that OPSO’s failure to execute the outstanding alias capias may have had on the surety contract itself given that: (1) FCS would have been relieved of liability *956 had the alias capias been executed;[2] (2) OPSO gains a financial benefit in the event of a bond forfeiture;[3] and (3) OPSO’s failure to execute the outstanding alias capias contributed to the bond being forfeited. Specifically considering the circumstance where Defendant was in OPSO custody while OPSO had a duty to execute an outstanding alias capias[4] and OPSO failed that duty by not executing the alias capias, it is necessary to address how OPSO’s actions, taken on behalf of the State of Louisiana, may have modified the principal obligation that the bond serves to secure — the Defendant’s appearance.
First, it is essential to clarify a surety’s obligations under La.C.Cr.P. art. 345. Part (B) of that statute states that a surety “may apply for and receive” a “letter verifying that the defendant is incarcerated” if the defendant “is incarcerated by the officer originally charged with his detention” at any time prior to forfeiture or within the time allowed by law for setting aside a judgment of forfeiture. Statutes are to be applied in a manner that is logical and consistent with their presumed purpose. State v. Nelson, 2012-1429, p. 4 (La.App. 4 Cir. 9/4/13), 124 So.3d 1115, 1118. The Legislature’s use of the phrase “verifying that the defendant is incarcerated” logically means that the law enforcement agency is to certify that the defendant is in fact incarcerated upon the surety’s request for such verification. This verification, upon proper presentation by the surety to the district court, releases the surety from its obligations under the bond contract. La.C.Cr.P. art. 345(F).
In its appellee brief, the State argues that a defendant must be “incarcerated when the letter of incarceration is obtained and presented.” (emphasis added). While La.C.Cr.P. art. 345(B) does make it clear that the letter must be applied for during the defendant’s incarceration, Part (F) does not have the same requirement that the surety “present” contemporaneously with “incarceration” that Part (B) does when requiring that the surety “apply for” a letter “verifying that the defendant is incarcerated.” Instead, Part (F) requires that the court “shall, upon presentation of *957 the ... letter of verification of incarcera: tion, order that the surety be exonerated from liability on his bail undertaking and shall order any judgment of forfeiture set aside.” When read together, these two parts of the statute give the order in which the surety is to operate when requesting that a judgment of bond forfeiture be set aside. First, while the defendant is incarcerated) the surety must apply for its letter of verification of incarceration. Then, after it has received the letter of verification of incarceration, the surety has the right to present the letter to the court in order to be exonerated from liability within the time limits set for setting aside a judgment of bond forfeiture, regardless of whether the defendant is still incarcerated or not. Therefore, the surety must request the letter of verification of incarceration while the defendant is incarcerated.[5]
To read the statute otherwise is reductio ad absurdum. See, e.g., Fullilove v. U.S. Cas. Co. of N. Y., 240 La. 859, 886, 125 So.2d 389, 399 (1960) (refusing to construct language in a manner that produces an absurd result). If the surety had the authority to apply for the verification of incarceration letter after the defendant’s incarceration ended, OPSO would be asked to verify that they have custody of someone who is not under their control at the time of the request. Further, if the surety could not present the letter after receipt at any time within his statutorily allowed set aside delays, OPSO could prevent him from exercising his right to a set aside by refusing to issue the letter until after the defendant is released from custody. The idea that the Legislature intended either stakeholder to be able to manipulate.the rights of the other to such a. degree is an absurd result. Id.
When taken as a whole, the reasonable interpretation of La.C.Cr.P. art. 345 is that verification of incarceration letters must be requested during incarceration, so as to allow law enforcement officials to verify facts that are indeed true, and that sureties may present their verification of incarceration letters during their statutorily allowed delays, regardless of the incarceration status of the defendant. Here, FCS admits it did not obtain a letter of verification of incarceration while the defendant was incarcerated. However, for reasons discussed in greater detail below, due to the actions of the principal obligor to the surety contract, the laws of surety-ship may allow for FCS to be released from its obligation.
One who posts an appearance bond[6] enters into a suretyship agreement with the surety for the benefit of the creditor, the State of Louisiana, which is considered a civil contract. State v. Berry, 29,359, p. 5 (La.App. 2 Cir. 4/2/97), 691 So.2d 375, 378. See also State v. Bailey, 567 So.2d 721, 724 (La.App. 2 Cir.1990) (citing State v. Shief, 534 So.2d 513 (La.App. 5 Cir. 1988), and Cormier v. Vidrine, 491 So.2d 397 (La.App. 3 Cir.1986)). “As criminal bail bonds are contractual and civil in nature, their creation and enforcement are governed by both the laws applicable to civil contracts and by the laws set forth in the statutes and code..articles governing *958 criminal procedure.”. La. R.S. 15:83. Although procedural and jurisdictional authority for the forfeiture of such a bond vests with the criminal ■ court, the obligation of the surety, being civil in nature, is enforced in civil proceedings. State v. Bailey, 567 So.2d at 724. Given that the bond is a suretyship contract subject to the rules of the Civil Code, it must be analyzed as such.
Suretyship is “an accessory contract by which a person binds himself to fulfill the obligation of another upon the failure of the latter to do so.” La. C.C. art. 3035. In a commercial bond agreement, the principal obligation is. the defendant’s appearance at all stages of the proceedings against him. The creditor of that obligation is the State of Louisiana[7] which acts through the district court to require security, called bail. La. C.C. art. 326 (referring to the security required as the “bail undertaking” and the contract securing that undertaking as a “bond.”) The defendant enters' into the accessory contract of suretyship, called a bond, with the surety, in order to provide the State of Louisiana with the required security. Id. Actions by the creditor that modify the principal obligation result in the release of the surety to the extent that the surety is prejudiced by those actions. La; C.C. art. 3062.
While FCS as the surety did not request the letter of verification while Defendant was incarcerated as required by statute, FCS’s ability to make that request was limited by OPSO’s failure to hold Defendant without bond as required by the outstanding alias capias as ordered by the district court. This release may have modified the principal obligation of the surety since when it-was within the creditor’s control to secure performance of the principal obligation-appearance of Defendant-the creditor prevented performance by not holding Defendant to make the required appearance.[8] Given the actions of OPSO, a hearing to review the totality of the circumstances with respect to the actions of all parties to the surety contract is necessary to determine whether FCS was prejudiced. If it were determined that the State of Louisiana modified the principal obligation in a way that prejudiced FCS such that FCS should be released from its obligation, the bond forfeiture judgment should be set aside.
■ Lastly, as Judge Love addresses in her dissent, an argument can be made that OPSO’s actions constitute a “fortuitous event” that would provide for the release *959 of FCS. La. R.S. 15:83(0(2) defines fortuitous event as “one that, at the time the contract was made, could not have been reasonably foreseen by the surety.”[9] Because in this case a party to the surety contract took an action to prevent performance; it is not necessary to determine whether that action is reasonably foreseeable in that an analysis under the laws of suretyship is appropriate in this case.
I respectfully dissent.

. La. R.S. 15:83(A). Although this issue was not directly briefed by the parties, under Uniform Rules, Courts of Appeal, Rule 1-3, the interest of justice clearly requires consideration of this issue. See also La. C.C.P. art. 2164 (stating that the “appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.” Revision comment (A) (1960) states that “The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.”). State v. Lexington Nat. Ins. Corp., 2013-1134, p. 4 (La.App. 3 Cir. 3/5/14), 134 So.3d 230, 233 (addressing, in a case about bond contracts, a non-disposi-tive issue in order to clarify why certain arguments were improper applications of the law).

. La.C.Cr.P. art. 349.8, which has been cited by both parties, states in relevant part, “For bonds that have a face value under fifty thousand dollars, a judgment forfeiting the appearance bond shall at any time, within one hundred eighty days after the date of mailing the notice of the signing of the judgment of bond forfeiture, be fully satisfied and set aside upon the surrender of the defendant or the appearance of the defendant.” At the hearing on the motion to set aside the judgment of bond forfeiture, Judge Herman explained that a defendant for whom an alias capias has been issued must appear before the judge who issued it when it is executed. A remand in this case would allow for the district court to determine why this procedure was not followed by OPSO and whether FCS was prejudiced by OPSO’s actions.

. Under La. R.S. 13:1381.2, which establishes the Sheriff's Fee Fund, costs not more than twenty-five dollars are assessed against the surety every time a bond is forfeited in Orleans Parish, which are distributed to this fund. The Sheriff's Fee Fund is administered solely by the Sheriff of Orleans Parish. Further, under La. R.S. § 13:1377, which establishes the Criminal Court Cost Fund, twenty-five dollars is paid by the surety to the fund each time a bond is forfeited, which is distributed amongst the offices of "various officials and agencies which maintain offices in said building.” OPSO, as an agency maintaining an office in the Criminal District Court of Orleans Parish, is eligible to receive disbursements from this fund. Lastly, under La. R.S. 13:1381.5, OPSO receives twenty percent of all criminal bail bonds licensing fees in Orleans Parish.

."Each sheriff or deputy ... shall execute all writs, orders, and processes of the court or judge thereof directed to him.” La. R.S. 13:5539.

. I would note that the form of the "Letter of Verification of Incarceration” sent by OPSO to FCS in this case appears to be statutorily deficient, as it does not contain the date verification of incarceration was requested. However, this deficiency does not affect the analysis as FCS admits that it did not request the letter during Defendant's incarceration.

. See, La. R.S. 15:88, stating in relevant part, "[T]he term 'appearance bond’ shall be taken and intended to mean every bail bond, recognizance, or other obligation, or deposit of cash, checks, negotiable bonds, or money orders, made or taken to secure the appearance of any person before any court....”

. 'See La.C.Cr.P. art. 381, stating, “A criminal prosecution is brought in the name of the state in a court of criminal jurisdiction, for the purpose of bringing punishment to one who has violated a criminal law. The person .injured by the commission of an offense is not ,a party to the criminal prosecution, and his rights are not affected thereby.” It is important to note that "state” refers to the state as a complete entity, including all of its component parts and political subdivisions; La. C.Cr.P, art. 934(10), stating, " ‘State’ includes a city or other political subdivision of the state.” See also La. Const. art. V § 32 (referring to the sheriff’s office in Orleans Parish in the section on powers of the judicial branch); La. R.S. 13:5102 (stating that, for the purposes of that title, the term "political subdivision” means "any ... sheriff”); Alvarado v. Poche, 2002-2, p. 2 (La.App. 3 Cir. 6/5/02), 819 So.2d 1150, 1152 (finding that a sheriff’s office is a political subdivision).

. In fact, there is support for the proposition that when law enforcement fails in the performance of its duties a surety may be released built into La.C.Cr.P. art. 345. Part G of that article states that if, after payment of the appropriate fee, the defendant's name is removed from the National Crime Information Center registry (which lists active warrants) "without cause,” during the period provided for surrender of the defendant, the surety is relieved of "all obligations under the bond.”

. As noted by Judge Tobias in dissent in State v. Allen, a “fortuitous event’’ is defined in the Civil Code as one that makes performance impossible. 2011-0693, p. 2 (La.App. 4 Cir. 8/8/12), 98 So.3d 926, 931, (Tobias, J., dissenting) writ denied, 2012-1995, p. 2 (La.4/1/13), 110 So.3d 138 (citing La. C.C. art. 1873). The definition given in La. R.S. 15:83(0(2) appears to mean something less arduous than the La. C.C, art. 1873 definition, but neither is specifically applicable to the situation where a party to the surety contract caused the event in question.